FILED
2012 Sep-05  AM 11:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **FREDERICKA M. PROWELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:10-CV-2993-VEH** |
| | ) |
| **THE STATE OF ALABAMA** | ) |
| **DEPARTMENT OF HUMAN** | ) |
| **RESOURCES, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff Fredericka M. Prowell ("Ms. Prowell") initiated this job discrimination and retaliation lawsuit arising under Title VII and § 1981 (by and through § 1983) on November 5, 2010. (Doc. 1). The complaint contains twelve counts: (1) Title VII racial discrimination against the Alabama Department of Human Resources ("ADHR") and Jefferson County Department of Human Resources ("JCDHR") (collectively "DHR"); (2) Title VII retaliation against ADHR and JCDHR; (3) § 1981 racial discrimination against Angela McClintock ("Ms. McClintock"); (4) § 1981 racial discrimination against Amanda Rice ("Ms. Rice"); (5) § 1981 racial discrimination against Terri Beasley ("Ms. Beasley"); (6) § 1981

racial discrimination against Joanna Stone ("Ms. Stone"); (7) § 1981 racial discrimination against Vivian Hunter ("Ms. Hunter"); (8) § 1981 retaliation against Ms. Stone; (9) § 1981 retaliation against Ms. McClintock; (10) § 1981 retaliation against Ms. Rice; (11) § 1981 retaliation against Ms. Beasley; and (12) § 1981 retaliation against Ms. Hunter.

Pending before the court are the following six motions: (1) Ms. Hunter's Motion for Summary Judgment (Doc. 48) ("Ms. Hunter's Rule 56 Motion") filed on May 21, 2012; Ms. Beasley, Ms. McClintock, Ms. Rice and Ms. Stone's Motion for Summary Judgment (Doc. 49) (collectively, "Ms. Stone's Rule 56 Motion") filed on May 21, 2012; (3) ADHR and JCDHR's Motion for Summary Judgment (Doc. 51) (collectively, "DHR's Rule 56 Motion") filed on May 21, 2012; (4) Defendants' Motion To Strike Affidavit of Fredericka Prowell (Doc. 74) ("Defendants' Prowell Motion") filed on July 5, 2012; (5) Defendants' Motion To Strike Affidavit of Tonya Daniel (Doc. 75) ("Defendants' Daniel Motion") filed on July 5, 2012; and (6) Defendants' Motion To Strike Affidavit of Erica Pearson (Doc. 76) ("Defendants' Pearson Motion") filed on July 5, 2012.

Defendants have filed briefs and evidence in support of their Rule 56 Motions. (Docs. 50, 52-66). Ms. Prowell collectively filed her opposing brief, with attachments, to all Rule 56 Motions on June 21, 2012. (Docs. 69-70). On July 3,

2012, Ms. Hunter filed a reply in support of her Rule 56 Motion (Doc. 73), and on July 5, 2012, the other defendants collectively filed their reply. (Doc. 77).

Ms. Prowell filed her opposition (Doc. 78) to Defendants' Prowell Motion, Daniel Motion, and Pearson Motion on July 16, 2012. Defendants followed with their reply (Doc. 79) on July 18, 2012.

Accordingly, all motions are now under submission. For the reasons explained below, the Prowell Motion is due to be granted in part and termed as moot in part, the Daniel Motion is due to be termed as moot, and the Pearson Motion is due to be granted in part and termed as moot in part. Further, DHR's Rule 56 Motion, Ms. Hunter's Rule 56 Motion, and Ms. Stone's Rule 56 Motion are all due to be granted, and Ms. Prowell's lawsuit is due to be dismissed.

## II.   FACTUAL BACKGROUND[1]

At the time Ms. Prowell filed her federal court complaint on November 5,

---

[1] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

2010, she was employed by ADHR and working for JCDHR classified as a Service Supervisor within the Child Welfare Division of the state merit system.  AF No. 2.[2] Ms. Prowell's supervisors were the Assistant Director of JCDHR, Ms. McClintock, and the Director of the JCDHR, Ms. Rice, and Ms. Beasley.  AF No. 26.

On September 15, 2009, Ms. Prowell had a physical confrontation with one of her minor daughters.  AF No. 7.  More specifically, Ms. Prowell allegedly used a belt to strike her minor daughter's lower leg three times.  AF No. 8.

During the evening of that same date, Ms. Prowell's husband made a report to JCDHR against her for child abuse and neglect ("CA/N") relating to this incident. AF Nos. 6, 9.  Because the call came in during the night, Ms. Hunter, as the Night Shift Supervisor, was responsible for the initial investigation of the report, along with Chrislyn Pepper ("Ms. Pepper"), who conducted the initial safety assessment for the JCDHR report.  AF No. 6.  Additionally, because the report involved a JCDHR employee, Ms. Hunter notified her supervisor, Ms. McClintock.  AF No. 10.

Ms. Hunter and Ms. Pepper then interviewed the Ms. Prowell's daughter at her

---

[2]  "AF" stands for admitted fact.  These admitted facts are taken from Ms. Hunter's narrative summary of undisputed facts contained in her brief (Doc. 48-1 ¶¶ 2, 6-8, 10-13, 16-18, 20-23, 25-27) and Ms. Prowell's response, which does not directly or indirectly dispute these facts.  (Doc.  69 at 2-3).  Many other facts are referenced by the parties, but have not been included in this background, as they are immaterial to the court's ruling on summary judgment.

grandparents' home in Fairfield, Alabama, and determined that she was no longer in danger.  AF No. 11, 12.  Ms. Hunter and Ms. Pepper returned to the JCDHR office and entered the information into the FACTS reporting system and also sent it by email to the intake section.  AF No. 13.

On September 16, 2009, Ms. Prowell met with Ms. McClintock and Ms. Beasley, and Ms. McClintock told Ms. Prowell that she had to go home on leave and use her compensatory time while DHR investigated the allegations of child abuse by her against her daughter.  AF No. 16.  On that same date, Ms. McClintock called Sherry Pilkington ("Ms. Pilkington"), the Director of St. Clair County DHR.  AF No. 17.

Ms. McClintock informed Ms. Pilkington that JCDHR had received a report of child abuse or neglect on a child protective services employee and requested that St. Clair take responsibility for further investigation of the CA/N report.  *Id.*  Ms. Pilkington agreed to Ms. McClintock's request, and assigned St. Clair DHR employee, Melinda Fomby ("Ms. Fomby") to handle that task.  AF Nos. 17, 18.

Consistent with JCDHR's customary practice, Ms. Rice also decided to transfer Ms. Prowell from the Child Welfare Division to Child Support while the investigation into the alleged abuse of her minor daughter was underway.  AF Nos. 20, 21.  Ms. Prowell's salary did not change during the time she worked in JCDHR's Child

Support Division.  AF No. 27.

Ms. Prowell maintains that ADHR, JCDHR, Ms. McClintock, Ms. Rice, Ms. Beasley, Ms. Stone, and Ms. Hunter all played a part in placing her on leave and that the only reason they did this was because of her race.  AF No. 22.  Ms. Prowell also asserts that ADHR, JCDHR, Ms. McClintock, Ms. Rice, Ms. Beasley, Ms. Stone, and Ms. Hunter retaliated against her because of the allegations of child abuse made against her.  AF No. 23.

## III.   STANDARDS

### A.   Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'"  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270,

1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

### B.    Employment Discrimination Generally

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *Desert Palace v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003), that allocation scheme applies only in cases in which there is no direct evidence of discrimination.  *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[3]

---

[3] As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate [or retaliate] on the basis of [a protected category], . . . constitute direct evidence of discrimination [or retaliation]." *Carter v. City of Miami*, 870 F.2d 578, 782 (11th Cir. 1989) (footnote omitted). Based upon this standard and in the absence of a record of <u>any</u> invidiously-charged

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must either prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination or present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though the defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## C.    Evidentiary Rulings

"All evidentiary decisions are reviewed under an abuse-of-discretion standard." *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517, 139 L.

---

utterances, Ms. Prowell's case is purely a circumstantial evidence one. (*See, e.g.*, Doc. 69 at 5 ("[Ms. Prowell] has established a *prima facie* case of retaliation with respect to job duties, and assignments, job evaluations, pay, working conditions, hiring, promotion, hostile work environment, discipline, and other terms and conditions of employment in violation of Title VII of the Civil Rights Act . . . ."); *id.* at 32-33 (setting forth circumstantial model of proof)).

Ed. 2d 508 (1997). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 Fed. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court. Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989). Moreover, even if Auto-Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* Fed. R. Evid. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore, even the existence of many evidentiary errors does not guarantee the party appealing a new trial. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" for reversible error to occur.

## IV.   ANALYSIS

### A.   Defendants' Evidentiary Motions

#### 1.   Defendants' Prowell Motion

Ms. Prowell relies upon her own affidavit in opposition to summary judgment. (Doc. 69-2 at 1-9).[4]  In their Prowell Motion, Defendants seek to strike the majority of Ms. Prowell's affidavit, citing a variety of different grounds, including primarily a lack of personal knowledge on her part.  "FRCP 56(e) and the Eleventh Circuit require that affidavits in support of or in opposition to summary judgment must be made with personal knowledge in order to create a genuine issue of material fact." *Delaware Valley Floral Group, Inc. v. Shaw Rose*, 597 F.3d 1374, 1382 (11th Cir. 2010).

Noticeably absent from Ms. Prowell's affidavit is an affirmation that it is based on her personal knowledge.  Instead, she indicates that the information contained in her affidavit is premised merely upon "the best of [her] knowledge and belief."

Such a limited statement does not suffice within the Eleventh Circuit under Rule 56. *See, e.g., Robbins v. Gould*, 278 F.2d 116, 118 (5th Cir. 1960) ("'to the best

---

[4]  The page references to this and other record evidence corresponds with the CM/ECF page numbering.

of my knowledge and belief'" is "[a]t best this is nothing more than [an] opinion given without any demonstrated basis of knowledge");[5] *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965) ("Moreover, verification must be on personal knowledge alone, whereas these petitions were verified only on 'knowledge, information and belief.'"); *see also Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000) ("This bare and self-serving allegation [based only upon information and belief] where she had no personal knowledge is inadequate to carry Stewart's burden on summary judgement."); *Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002) ("Likewise, an affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact.").

Additionally, portions of  her affidavit expressly reference information obtained from other witnesses as evidentiary support.  (*See, e.g.*, Doc. 69-2 ¶¶ 5-8, 12 (referencing Pearson affidavit)).   More importantly, Ms. Prowell has not articulated how she has personal knowledge about the employment decisions

---

[5]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

pertaining to her two white purported comparators,[6] Tenille Garnett ("Ms. Garnett") and April Garner ("Ms. Garner"),[7] when there is a plethora of evidence that neither one was ever employed by JCDHR, or how she is able to swear under oath that JCDHR Assistant Director, Ms. McClintock, was somehow temporarily their supervisor while they were being investigated for reported child abuse.  Accordingly, the court finds that the Prowell Motion is due to be granted as it pertains to any testimony about who had supervising authority over Ms. Garnett and Ms. Garner with respect to employment-related matters.

Defendants' Prowell Motion also challenges Ms. Prowell's reliance upon a subsequent EEOC charge filed on March 21, 2011, in which she asserts additional allegations of race discrimination and retaliation.  (Doc. 69-2 ¶ 24; Doc. 69-4).  The administrative status of this second charge is unclear to the court, as no information is provided by Ms. Prowell about whether the EEOC has ever closed this administrative file and issued a right to sue letter to her.

Regardless, Ms. Prowell has never amended her complaint in an effort to assert additional discrimination or retaliation claims stemming from this subsequent

---

[6]  The court addresses the inadequacies of Ms. Prowell's reliance upon Ms. Garnett and Ms. Garner as comparators in § IV.B.1.a.(1) below.

[7]  Within the record, Ms. Garner is also referred to as April Minor ("Ms. Minor") (Doc. 77 at 5) and April Carpri.  (Doc. 55-5 at 24).

charge, and the deadline for her to amend pleadings passed over one year ago. (*See* Doc. 11 at 2 ("Plaintiff may amend pleadings and/or join additional parties, in accordance with Fed. R. Civ. P. 15, until April 4, 2011.") (emphasis omitted)). Accordingly, because her second charge is untimely under the court's scheduling order and has been improperly interjected before the court on summary judgment, the court agrees with Defendants' Prowell Motion that all references to the second charge are due to be struck.

Finally, the court finds that the remaining portions of Defendants' Prowell Motion are due to be termed as moot because summary judgment is due to be granted even when considering these additional areas of evidence offered by Ms. Prowell.

### 2.    Defendants' Daniel Motion

Ms. Prowell also relies upon the affidavit of Tonya Daniel ("Ms. Daniel") in opposition to summary judgment. (Doc. 69-6). Ms. Daniel's testimony focuses upon discussions that she had with Ms. Hunter and Ms. McClintock about the child abuse complaint lodged against Ms. Prowell. (*See, e.g.*, Doc. 69-6 ¶¶ 6, 14).

In their Daniel Motion, Defendants seek to strike several parts of Ms. Daniel's affidavit on lack of personal knowledge, relevancy, and hearsay grounds. (*See generally* Doc. 75). The court finds that the Daniel Motion is due to be termed as moot because the evidence bears no weight on the merits of Ms. Prowell's

employment claims, and summary judgment is due to be granted with or without considering this objected-to proof offered by Ms. Daniel.

### 3.  Defendants' Pearson Motion

Ms. Prowell further points to the affidavit of Erica Pearson ("Ms. Pearson") in opposing summary judgment.  The subject of Ms. Pearson's testimony is the investigation into the child abuse allegations asserted against Ms. Garnett. Defendants' Pearson Motion disputes the contents of Ms. Pearson's affidavit on numerous grounds, including lack of personal knowledge, inaccuracies, irrelevancy, hearsay, absence of authentication, and incompetency.  (*See generally* Doc. 76).

Several statements included in the Ms. Pearson's affidavit suggest that the supervisors of the Cullman County DHR had no authority over Ms. Garnett while she was under investigation and that, instead, JCDHR Assistant Director Ms. McClintock was one of the supervisors with the power "to mandate participation or removal of Ms. Garnett from her position." (Doc. 69-5 ¶ 8).  Ms. Pearson also maintains that the handling of Ms. Garnett's situation was in contravention of certain DHR policies and rules.  (*See, e.g.*, Doc. 69-5 ¶¶ 20-22).

However, in providing this information, Ms. Pearson (like Ms. Prowell) ineffectively swears "to the best of [her] knowledge and belief." (Doc. 69-5 at 10). Accordingly, the court concludes that, due to the absence of personal knowledge,

14

Defendants' Pearson Motion is due to be granted as it pertains to any testimony from Ms. Pearson about who had supervising authority over Ms. Garnett and about whether Ms. Garnett's treatment was consistent with DHR policy.  The court further finds that the remaining portions of Defendants' Pearson Motion are due to be termed as moot because summary judgment is due to be granted even when factoring in the other challenged proof offered by Ms. Pearson.

### B.    DHR's Rule 56 Motion

#### 1.    Title VII Race Discrimination

"To prevail on a discrimination claim under Title VII and § 1981, an employee must establish that 'she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.'"  *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)); *see also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (confirming that Title VII and  § 1981 share "the same requirements of proof and use the same analytical framework") (11th Cir. 1998).

Regarding race discrimination, Ms. Prowell complains about three separate

situations as set forth in her brief:[8]  (1) her temporary reassignment during the CA/N

investigation (Doc. 69 at 8); (2) her required use of her accrued compensatory time

during the CA/N investigation (*id.* at 25); and (3) her failure to receive a promotion.

(*Id.* at 26).  The court addresses each area in turn.

### a.    Temporary Reassignment

### (1)    *Prima Facie* Case

With respect to her temporary reassignment claim, Ms. Prowell maintains that

DHR handled the child abuse investigations of Ms. Garnett and Ms. Garner more

---

[8]  The court notes that, to the extent Ms. Prowell has failed to brief the court on her other allegations of discrimination contained in her complaint, it is appropriate for the court to treat those particular claims as abandoned.  *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"); *McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint).

discretely than hers,[9] and that Ms. Garnett, in particular, retained her same position while she was under investigation.  (Doc. 69 at 9).

As the Eleventh Circuit has clarified appropriate comparator evidence:

The plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects."  The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.

*Wilson*, 376 F.3d at 1091 (emphasis added) (citation omitted).  Additionally, "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis omitted) (citing *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)).

DHR argues that Ms. Prowell's *prima facie* case is deficient because she cannot satisfy the similarly situated standard with respect to her purported comparators.  For example, DHR points out, with citations to evidence in the record, that the comparators upon which Ms. Prowell relies were never supervised by Ms. Rice or Ms. McClintock, as neither was an employee of JCDHR.  Instead, Ms. Garnett

---

[9]  In opposing summary judgment, Ms. Prowell does not contend that her compromised privacy during the CA/N investigation is a separate claim of race discrimination.  However, even if she had, the court would have serious doubts about its cognizable nature from a *prima facie* standpoint under the analytical framework set forth below.

worked for Cullman County DHR (*see, e.g.*, Doc. 56-2 at 32; Doc. 56-3 at 3, 13)[10]

and Ms. Garner for Shelby County DHR.  (*See, e.g.*, Doc. 55-5 at 25, 28-31; Doc. 56-

1 at 2-3, 8-11).

Thus, the key decision-makers (*i.e.*, Ms. Rice and Ms. McClintock) most

directly involved with the employment-related decision challenged by Ms. Prowell

as discriminatory are different than the individuals who supervised Ms. Garnett and

Ms. Garner.  (*See, e.g.*, Doc. 58-8 (Ms. Garnett's deposition transcript) at 8 ("Q. . . .

Has Angela McClintock ever been your supervisor?  A.  No.")).  Moreover, Ms.

Prowell has offered no evidence that there were any other JCDHR employees who

remained in their same supervisory position within child protective services while

being investigated for a CA/N report.

Additionally, unlike Ms. Prowell, neither Ms. Garnett nor Ms. Garner were

DHR supervisors, and more specifically neither were responsible for supervising

other employees working in the area of child protective services.  (*Compare, e.g.*,

Doc. 56-3 at 13 (Ms. Garnett's classification of "SOCIAL WORKER"), *with* Doc. 54-

---

[10]    Even evidence offered by Ms. Prowell to contest summary judgment
confirms that Ms. Garnett "is a Child Welfare worker for the Alabama Department
of Human Resources, Cullman County Department." (Doc. 69-5 ¶ 2). Moreover, Ms.
Prowell has pointed to no admissible proof to substantiate her suggestion that Ms.
Rice and/or Ms. McClintock "were supervising authorities of" Ms. Garnett (or Ms.
Garner).  (Doc. 69 at 14).

2 at 8 (Ms. Prowell's classification of "SERVICE SUPERVISOR")).  Further, Ms. Prowell has produced no evidence that other similarly situated supervisors remained in their identical position during the pendency of a CA/N investigation.  Therefore, Ms. Prowell has failed to demonstrate Ms. Garnett's and Ms. Garner's substantial similarity in all relevant respects, and her *prima facie* case relating to her job reassignment falls.

Ms. Prowell's temporary transfer claim *prima facially* fails for a second reason–a lack of sufficient substantiality.  To be considered an adverse employment action for the purposes of Title VII discrimination, "the action must either be an ultimate employment decision or else must 'meet some threshold level of substantiality.'" *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004) (citing *Bass* v. *Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001)).

Not everything, therefore, that makes an employee unhappy constitutes an adverse employment action or otherwise meets the substantiality threshold that is applicable to discrimination actions under Title VII.  Instead, for conduct to be considered adverse, it must materially alter the employee's compensation terms, conditions, or privileges of employment.  *Bass,* 256 F.3d at 1118.  A materially adverse change in the terms and conditions of employment must be more disruptive

than a mere inconvenience or an alteration of job responsibilities. *See Hartsfield v. Miami-Dade County*, 90 F. Supp. 2d 1363, 1374 (S.D. Fla. 2000) (quoting *Crady v. Liberty National Bank*, 993 F.2d 132, 136 (7th Cir. 1993)), *aff'd*, 248 F.3d 1179 (11th Cir. 2001).

Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; whether the employment action is materially adverse is determined, at least in part, by applying the reasonable person in the circumstances standard. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Indeed, the determination of whether something constitutes an adverse employment action must be made on a case-by-case basis and, like the hostile work environment analysis, contains both an objective and a subjective component. *See Hansen v. Perry Technologies*, 206 F. Supp. 2d 1223 (S.D. Fla. 2002) (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir.1998)).

Here, Ms. Prowell's job reassignment to the JCDHR Child Support Division was merely a temporary one occurring during the CA/N investigation. Additionally, the record undisputably establishes that she retained the same level of pay, and there is no indication that her level of customary benefits was reduced as a result of this impermanent arrangement. (*See* Doc. 69-2 ¶ 2 ("I was . . . removed from my position and duties as Service Supervisor at Jefferson County DHR and relegated to a non-

supervisory position in the child support office <u>although my salary and title officially</u> <u>went unchanged</u>.") (emphasis added)).   Under such circumstances, the court determines that Ms. Prowell's temporary job reassignment lacks sufficient substantially, and as a result her *prima facie* case fails on that claim for this additional reason.

## (2)   Pretext

Ms. Prowell's job reassignment race discrimination claim also fails due to her inability to show pretext.  In addressing the issue of pretext, the Supreme Court has stated:

> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
>
> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148, 120 S. Ct at 2109.  Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted

justification for an adverse employment decision, judgment as a matter of law in favor of the employer would still be appropriate if the record:  1) conclusively demonstrates some other, nondiscriminatory basis for the decision; or 2) reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place. Furthermore, the crucial examination at the pretext level is whether the employer has honestly explained its actions, not whether the court would make the same decisions.

Ms. Prowell has not pointed to any evidence from which a reasonable jury could conclude that the JCDHR's explanation for temporarily reassigning her was a pretext for (or a lie to conceal) its true motivation—illegal discrimination based upon the shade of her skin color.  More specifically, JCDHR has stated that its reason for temporarily reassigning Ms. Prowell stemmed from a concern about having her remain in a supervisory position within the JCDHR Child Abuse Division while she was being investigated for reported child abuse.

To the extent that Ms. Prowell relies upon Ms. Garnett and Ms. Garner as comparators in an effort to show pretext, such examples are ineffective under the same analysis employed above in § IV.B.1.a.(1).   Ms. Prowell also has not offered any evidence of racially derogatory comments or jokes by Ms. Rice or Ms. McClintock from which a reasonable trier of fact could conclude that either held a racial bias against African-American employees.   Therefore, Ms. Prowell's race

discrimination claim premised upon her temporary reassignment is lacking on both *prima facie* and pretext grounds and is due to be dismissed.

### b.   Accrued Compensatory Time

### (1)   *Prima Facie* Case

Ms. Prowell also claims race discrimination because she was required to use her accrued compensatory time while on leave during the CA/N investigation. Assuming without deciding that this action does meet the substantiality standard due to its negative economic impact on Ms. Prowell's accrued benefits, the claim is still inadequate from a *prima facie* standpoint because of the deficient comparator evidence upon which she relies.  More specifically, how Ms. Garnett and Ms. Garner were treated with respect to their jobs and benefits when they were being investigated for child abuse is unhelpful to Ms. Prowell because they both worked in different counties than she, had different supervisors than she, and served in different DHR capacities (*i.e.*, non-supervisory versus supervisory) than she.

Moreover, it is undisputed that during 2009 there was a state-wide effort by DHR  to zero out compensatory time balances for supervisors, like Ms. Prowell, and reduce the accounts of non-supervisory employees, such as Ms. Garnett and Ms. Garner.  (*See, e.g.*, Doc. 57-4 (Ms. McClintock's deposition transcript) at 8 at 19 ("Almost every supervisor under my administration carried a comp time balance, and

every supervisor was made to take that comp time balance to a zero.  There was no exception."); Doc. 70-11 at 1 ("The mandate to reduce current comp time balances as well as the amount of comp time accrued is real and serious."); Doc.  57-6 (Ms. Beasley's deposition transcript) at 8 at 19 (summarizing requirements of directive as "[t]o reduce the supervisor's comp time to zero and to reduce the workers' comp time incrementally until we get it to – below 40, 40 or below."); Doc. 58-8 (Ms. Garnett's deposition transcript) at 7 ("Q.  Have you ever been required to use your . . . comp time . . . or leave time?  A. Yes.")).

Therefore, the record fails to show that Ms. Prowell was somehow singled out when Ms. McClintock required her to use her compensatory time, because all DHR employees were subject to a directive to either reduce or, in the case of supervisors, entirely eliminate their compensatory time balances.  Accordingly, Ms. Prowell's compensatory time discrimination claim is due to be dismissed on *prima facie* grounds.

### (2)    Pretext

Akin to her temporary reassignment, Ms. Prowell's compensatory time claim is alternatively due to be dismissed on pretext grounds.  Ms. Prowell has not shown pretext in Ms. McClintock's decision that JCDRH require her to use compensatory time while on leave, as it allowed her to still be paid during that investigative time

frame and supervisory employees, like Ms. Prowell, were already required to bring their compensatory time balances down to zero. (Doc. 57-5 at 8 at 20-21). In particular, Ms. Prowell has not shown where any white supervisory employees that were similarly accused of child abuse were able to maintain their compensatory time balances while such charges were being investigated.

One may debate whether such an action against Ms. Prowell was a wise employment decision by Ms. McClintock. But the Eleventh Circuit has made it clear that:

> Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA [, Title VII, or § 1981] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.

*Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *see also Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted).

Plainly stated, courts "do not . . . second-guess the business judgment of employers." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997); *accord Alexander v. Futon County, Ga.*, 207 F.3d 1303, 1339,1341 (11th Cir. 2000); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law.  We are not in the business of adjudging whether employment decisions are prudent or fair.") (citation omitted).

Accordingly, Ms. Prowell's discriminatory compensatory time claim is unviable from both a *prima facie* and a pretext standpoint, and is due to be dismissed.

### c.    Promotion

"In the failure-to-promote context, the *prima facie* case consists of showing these elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." *Wilson*, 376 f.3d at 1089.  Here, Ms. Prowell cannot sustain a *prima facie* claim of promotional discrimination because she has not identified one position that she applied for and for which she was qualified, much less referred to any suitable comparators who received the sough-out position in lieu of her.  (Doc. 69 at 26-30); *see Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir.

1998) ("For example, summary judgment is appropriate against a plaintiff who fails to demonstrate that he was qualified to perform the position for which he was rejected." (citing *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1520-21 (11th Cir.1990) (per curiam))); *see also Webb v. International Business Machines Corp.*, 458 Fed. App'x 871, 877 (11th Cir. 2012) ("Webb failed to establish a *prima facie* case regarding the permanent BUE position because Webb did not apply for the position.").

Alternatively, Ms. Prowell does not suggest that she was informally passed over for a specific position for which she was suited and in which JCDHR had reason to know her interest, but, nevertheless, selected an equally or less qualified white employee instead.  *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) ("However, where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post.") (citing *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992)); *cf. Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 ("*Teamsters* holds that nonapplicants may be entitled to relief where the employer's clear policy of exclusion would make an application a useless exercise.").

27

Here, Ms. Prowell meets neither application standard and fails to address other critical *prima facie* promotional elements, such as identifying the comparators who were selected for the position(s) that she wanted.  Instead, Ms. Prowell has merely made an ineffective generalized failure to promote claim.  Accordingly, summary judgment is due to granted with respect to that race discrimination claim as well.

### 2.    Title VII Retaliation

#### a.    *Prima Facie* Case

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events."  *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2410-16, 165 L. Ed. 2d 345 (2006)).  DHR's Rule 56 Motion maintains that Ms. Prowell's retaliation claim is fatally flawed because she has failed to identify any statutorily protected activity on her part that would give rise to a cognizable retaliation claim.

In responding to this contention, Ms. Prowell never identifies her purported protected expression under Title VII.  Instead, she non-responsively and repeatedly refers to various case authorities analyzing Title VII circumstantial retaliation claims

without ever relating them to her situation or citing to specific evidence showing how she engaged in protected conduct. (Doc. 69 at 29-33). Such a generalized opposition to summary judgment is inadequate. *See, e.g., Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989) ("There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986))); *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) ("[A] party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514)).

Furthermore, Ms. Prowell's EEOC charge filed on April 1, 2010 (Doc. 1 at Ex. A at 3) contains no references to Title VII protected conduct on her part nor otherwise includes allegations of retaliation. To the extent that Ms. Prowell relies upon her EEOC administrative filing as her Title VII statutorily protected activity, because the specific actions (*i.e.*, her temporary reassignment, the required use of her compensatory time, and her lack of promotions) about which she complains in this lawsuit all pre-date the filing of her EEOC charge (as they are listed therein), they

cannot serve to support a viable retaliation claim, due to the absence of a causal connection. *See Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, Griffin must show that the adverse act followed the protected conduct; this minimum proof stems from the important requirement that 'the employer was actually aware of the protected expression at the time it took adverse employment action.'" (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993))); *see also Leatherwood v. Anna's Linens, Co.*, 384 Fed. App'x 853, 859 (11th Cir. 2012) (finding no causal connection when issuance of counseling notices <u>predates</u> employer's receipt of EEOC charge); *cf. Goldsmith*, 513 F.3 at 1278 ("In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." (internal quotation marks omitted) (quoting *Brungart v. BellSouth Telecomms.*, Inc., 231 F.3d 791, 799 (11th Cir. 2000))).

Finally, in addition to not specifying her protected activity, Ms. Prowell does not explain what particular retaliatory actions support her retaliation claims. Assuming that the acts are the same as those offered in support of her Title VII race discrimination claims, then they are *prima facially* deficient akin to the reasoning stated above in § IV.B.1.a.(1). Therefore, the court finds that summary judgment in favor of ADHR and JCDHR is appropriate due to Ms. Prowell's inability to establish

a *prima facie* case of Title VII retaliation.

### b.   Pretext

Alternatively, to the extent that Ms. Prowell has established a *prima facie* claim of Title VII retaliation, she has not demonstrated pretext in JCDHR's explanation for its handling of her employment in light of the child abuse report made about her by her husband.  In particular, the only comparators that Ms. Prowell has identified are white non-supervisory employees who she claims received more favorable treatment than she on the basis of race.  In contrast, Ms. Prowell has not even attempted to point to any non-charge filing supervisory employees who she maintains JCDHR treated more preferentially under the similar circumstances of pending child abuse allegations.  Ms. Prowell also has not cited to any other evidence in an effort to show pretext with respect to retaliation.  Accordingly, summary judgment on Ms. Prowell's retaliation claim is due to be entered in favor of ADHR and JCDHR for the independent reason of Ms. Prowell's failure to demonstrate pretext.

### C.   Ms. Hunter's and Ms. Stone's Rule 56 Motions

Ms. Prowell has sued all individual defendants in both their individual and official capacities.  As the Eleventh Circuit has explained the distinctions between these two categories:

> "Personal-capacity suits seek to impose personal liability upon a

31

government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165-66, 105 S. Ct. at 3105 (citations omitted) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 2035 n. 55-56 L. Ed. 2d 611 (1978)).   In other words, a plaintiff in an action against a government official in his personal capacity can recover only against the official's personal assets. The assets of the governmental entity are not accessible.  The reverse is true in an official capacity lawsuit. Furthermore, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.... [I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* 473 U.S. at 166, 105 S. Ct. at 3105 (citations omitted).

Yet another distinction between official-capacity and personal-capacity lawsuits is the fact that "officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991).  Finally, both this court and the Fifth Circuit have held that Title VII actions are not appropriately brought against government officials in their personal capacities. Such suits may be brought only against individuals in their official capacity and/or the employing entity.  *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also Harvey v. Blake*, 913 F.2d 226 (5th Cir. 1990).

*Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992).

Against this backdrop, and having determined above that Ms. Prowell has no viable Title VII race discrimination or retaliation claims, the court similarly concludes that Ms. Hunter's Rule 56 Motion and Ms. Stone's Rule 56 Motion are both due to be granted.   In particular, neither personal capacity liability nor official capacity

liability can exist under § 1981 by and through § 1983 against any of the individual defendants when the facts, taken in the light most favorable to Ms. Prowell, fail to establish a triable issue regarding either race discrimination or retaliation. *See, e.g., Cross v. Alabama*, 49 F.3d 1490, 1507-08 (11th Cir.1995) ("When section 1983 is used as a parallel remedy for [a] violation of . . . Title VII . . ., the elements of the two causes of action are the same."); *Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009) ("We pause to note that discrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework."). Accordingly, summary judgment is due to be entered in favor of Ms. Hunter, Ms. Beasley, Ms. McClintock, Ms. Rice, and Ms. Stone both in their individual and official capacities.

## V.    CONCLUSION

For the reasons stated above, Defendants' Prowell Motion is due to be granted in part and termed as moot in part, Defendants' Daniel Motion is due to be termed as moot, and Defendants' Pearson Motion is due to be granted in part and termed as moot in part. Further, DHR's Rule 56 Motion, Ms. Hunter's Rule 56 Motion, and Ms. Stone's Rule 56 Motion, are all due to be granted, and Ms. Prowell's lawsuit is due to be dismissed.

Finally, the court notes that Defendants have requested oral argument in one of the reply briefs.  (Doc. 79 ¶ 5).  Because the court finds the issues presented on summary judgment to be straightforward, that request is due to be denied.   The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 5th day of September, 2012.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

34